## STATE v. KNUDSON.

An officer was sent into a saloon to arrest one S., who was in a fight. The defendant, a one-armed man, who had known the officer for some 30 years and was a friend of the belligerent, put his arm on the officer's shoulder, and told him to let S. go, and he would take him home and take care of him., The officer struck the defendant, who then desisted from any further act. An information was filed, alleging that the defendant had unlawfully obstructed an officer in the discharge of his duty. Penal Code, under which this information was based, provides that any one who willfully delays or obstructs an officer in the discharge of his duty is guilty of a misdeneanor. **Held,** that acts of the defendant did not constitute an obstruction of the officer, as "obstruction" usually means "to impede, hinder, or stop."

Whiting and McCoy, JJ., dissenting.

(Opinion filed May 22, 1911.)

Appeal from Circuit Court, Turner County. Hon. R. B. TRIPP, Judge.

Knud Knudson was convicted of obstructing a public officer in the discharge of his duties, and, his motion for new trial being overruled, he appeals. Reversed.

*Bogue & Bogue,* for appellant.

This case is based upon Sec. 187 of the Revised Penal Code of the state of South Dakota, which is as follows: "Every person who willfully delays or obstructs any public officer in the discharge or attempt to discharge any duty of his office, is guilty of a misdemeanor." The legal meaning of the words "delay," "obstruct," "resist," "impede," etc., as used in statutes like the foregoing seems to be that the acts declared against must be something more than a mere trespass without violence; that there must be forcible or active opposition to the official acts of the officer; and that the means used must be active and quasi forcible in character, to constitute an offense. Moses v. C., 64 S. E. 699; Allen v. S., 62 S. E. 1003; 49 Southern 715; State v. Welch, 37 Wis. 196; Farris v.

State, 82 Tenn. 14 Lea) 295; Merritt v. State, 5 Southern Rep. 386; Vince v. State, 39 S. E. 435, 113 Ga. 1070; United States v. Seeley, Fed. Case No. 16,248a; Crumption v. Newman, 12 Ala. 199; Davis v. State, 76 Ga. 721.

*Royal C. Johnson, Atty. Gen., M. Harry O'Brien, Asst. Atty. Gen., and A. S. Bogue, State's Atty., for the State.*

The use of the words "delay" and "obstruct" apparently indicates that the intention of the Legislature was to make unlawful such acts as come within the scholastic definition of these words. State v. Welch et al., 37 Wis. 196. The statute must receive a strict construction Whartons' C. L., § 1295. Defendant's duty as a citizen was to allow the officer of the law to take his own course and answer therefor to the proper party if he acted maliciously and oppressively or without probable cause. Montgomery v. Sutton, 58 Ia. 702; State v. Bris, 34 Me. 235; Heath v. State, 36 Ala. 273; State v. Ferry, 61 Vt. 624. Since the public good requires the due performance of official functions, a person who obstructs an officer therein in any manner of public concern, and of sufficient magnitude, is punishable. 4 Blackstone Com., 128; 2 McLain, 921; 1 Bishop New Crim. Law, Sec. 465. When it clearly appears that the officer was, when obstructed, in the performance of a duty enjoined on him by law, the person who obstructed him is guilty of the offense. Brown v. State, 32 So. 952; 29 Cyc. 1331; State v. Bowen, 17 S. C. 58; Commonwealth v. Kirby, 2 Cush. 557; Johnson v. State, 40 So. 678.

CORSON, J. Upon an information duly filed by the state's attorney of Turner county, the defendant was charged with the crime of willfully and unlawfully obstructing Soren Johnson, who was then and there chief of police of Centerville, in said county, in the discharge of a duty of his office, to-wit arresting one John Stolheim for a public offense then and there committed in his presence. Upon the trial the defendant was found guilty, and, from the judgment and order denying a new trial, he has appealed to this court.

At the close of plaintiff's evidence, the defendant moved the court to advise the jury to acquit the defendant for the following

reasons, among others: That there is no evidence in this case to show that the act of the defendant was done willfully, and that there is no evidence in this case to show that what the defendant did on that occasion in any way obstructed, or hindered, or delayed, the officer in making the arrest, or attempted arrest. This motion' was denied by the court, to which ruling the defendant excepted. At the close of all the evidence, this motion was renewed and denied by the court, to which ruling the defendant excepted.

The appellant, in his brief, states there are but three questions presented by this appeal, viz.: 1. Did the court err in refusing to advise the jury to acquit the defendant at the close of the state's evidence, and also at the close of all of the evidence? 2. Did the court err in denying defendant's motion for a new trial? 3. Is the verdict contrary to the evidence and the law?

It will be seen, therefore, that practically but one question is presented, and that is, Was the jury justified in finding the defendant guilty upon the evidence?

Soren Johnson, the complaining witness, called on the part of the state, testified in substance that he lived at Centerville, S. D., and was chief of police of that city on the 22d day of June, 1910; that he knows the defendant and saw him on the evening of the 22d of June at Frank Griffin's saloon in Centerville, between 7 and 8 o'clock in the evening; that there was a fight in there, and the saloon was filled with people; that he went in to arrest one Stolheim, and informed him he was under arrest, and asked him to go with him; that Stolheim dropped the fellow that he was fighting with and started at the witness; that the witness tried to take him away from the saloon and get him out, and in doing so the defendant, Knudson, came up and took hold of him (the witness), and said, "Let him go;" that Knudson got his arm around over the shoulder of the witness—just exactly how he was not sure; but he had his arm over his shoulder, trying to pull him away from Stolheim; that the crowd was thick in there, and that he had to fight—had to work through it to get out; that when the defendant, Knudson, took hold of him, he (the witness) struck

him, and the defendant quit; that he arrested Stolheim, and put him in the cooler, where he stayed over night; that Stolheim was tried before a justice of Centerville and found guilty and fined; that he had known Knudson for 20 or 30 years, and that Knudson knew him.

On cross-examination, he testified: Stolheim was fighting when the witness went into Griffin's saloon; that he did not know who he was fighting with, but saw him fighting there, and that he proceeded to make the arrest immediately; that he (Stolheim) was creating a disturbance in there; that when the witness got into the saloon he took hold of him immediately; that the saloon was full of people, 30 or 40 there; that he saw Knudson take hold of him (the witness), and he had his arm around him in some way; that he is a one-armed man, and had his one arm upon the shoulder of the witness; he could feel that he was pulling; could not say how much; that Knudson, when he had his arm on the shoulder of the witness, said to him, "Let him go," several times. In answer to the question, on cross-examination, "Didn't he tell you to let him go, to let him go home, and he would take care of him? A. I think he said that."

Ed. Dowling, on the part of the state, on cross-examination, testified to the question, "You say that Knudson had his arm on Johnson's shoulder? A. Yes, sir. It seemed to have some effect on him. Well, he just kind of whirled a little bit this way, and hit back with his club. Q. That is the effect it had on Johnson, then; and Knudson, if I understand you, put his hand up on Johnson's shoulder, and then Johnson hit him with his billy? A. Yes, hit him over his shoulder. Q. And he hit him immediately after Knudson put his arm up there? A. Yes, pretty quick after. Probably it wasn't five seconds." And it then appears that the accused desisted from any further act.

There were other witnesses who testified to substantially the same facts, corroborating the statement of the chief of police, but there was some conflict in the evidence, and for the purposes of this decision sufficient of the evidence has been given to show the nature of the obstruction of the officer.

The section of the Penal Code upon which the information was based reads as follows: "Every person who willfully delays or obstructs any public officer in the discharge or attempt to discharge any duty of his office, is guilty of a misdemeanor."

It will be observed that the information in this case simply charges the accused with obstructing the officer in the discharge of his duty. Webster defines the term "obstruct," among others, as follows: "To be, or come in the way of; to hinder from passing; to stop; to impede; to retard." And as synonyms: "To bar; barricade; stop; resist; check, interrupt; clog; choke; impede; retard; embarrass; oppose."

Most of the statutes use several words descriptive of the offense. In the federal statute the descriptive words are "obstruct," "resist," or "oppose," and this statute seems to be followed by Pennsylvania, Illinois, and several other states.

In 29 Cyc. 1331, the rule applicable to this class of cases is thus stated: "To constitute the offense, it must appear that the officer at the time of the alleged resistance or obstruction was actually performing a duty pertaining to his office * * * But when it clearly appears that the officer was, when obstructed, in the performance of a duty enjoined on him by law, the person who so obstructed him is guilty of the offense."

No decision has been called to our attention, giving a construction to the language used in our Code; but it was held by the learned Supreme Court of Wisconsin that, where the term "resist" is used in the statute, it means there must be "opposition" or "resistance" by direct, active, and quasi forcible means. State v. Welch et al., 37 Wis. 196.

We are inclined to take the view that the appellant is right in his contention that the facts proven in this case were insufficient upon which to base a conviction. It will be noticed that the accused, a one-armed man, who, as appears from the evidence, was somewhat under the influence of liquor, simply laid his arm upon the shoulder of the officer and requested him to let Stolheim go, to let him go home and he would take care of him, and that immediately thereupon the officer struck the accused with his billy,

and the accused did nothing more. It clearly appears from the evidence that the accused and Stolheim were farmers and neighbors, living some 10 miles south of Centerville, and it is difficult to discover from the evidence that the accused willfully intended to obstruct the officer in the discharge of his duty. The fact that the accused and the officer were old acquaintances, and that the accused, in connection with the words, let him go home—said that he would take care of him—seems to indicate that the act of the accused was simply a request to the officer to let him go, and not an attempt on the part of the accused to obstruct the officer in the performance of his duty.

We are of the opinion that the evidence in this case does not show that the acts and statements of the accused on this occasion were done willfully or maliciously, or with an intent to obstruct the officer in the discharge of his duty as such officer, and the evidence, in our opinion, fails to show that the defendant in any manner delayed or obstructed the officer, or that he had any intention of obstructing the officer in the performance of his duty, or to in any manner violate the law. As we view the evidence, therefore, we think the trial court should, at the close of all the evidence, at least have advised the jury to find a verdict of acquittal, and this view necessarily leads to the conclusion that the court erred in refusing to grant a new trial.

We do not wish to be understood as holding that, to constitute an obstruction of the officer under the statute, there must be an actual or technical assault upon the officer; but there must be acts clearly indicating an intention on the part of the accused to prevent the officer from performing his duty, and to aid and assist the party whom he is seeking to arrest in avoiding such arrest.

The judgment of the court below and order denying a new trial are reversed.

SMITH, P. J. I concur in the conclusion of Justice CORSON for the reason that the information only charges that the accused did "willfully and unlawfully obstruct Soren Johnson," the officer. The statute uses the words "delay or obstruct," and

the words used or not synonymous. The defendant may have been guilty under the evidence of willfully and unlawfully delaying the officer in the discharge of his duties; but he is not charged by the information with "delaying" the officer. The charge is that the defendant did willfully and unlawfully *obstruct* the officer. The word "obstruct," as used in these statutes, has a well-defined, legal meaning, and the acts of the accused, as disclosed by the evidence, fail to show that the accused either intended to obstruct or did obstruct the officer in the discharge of his duties, within the meaning of the word as used in the statute.

WHITING and McCOY, JJ., dissent.