**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff**

v.

**BRET GILLIAM, Defendant**

Criminal No. 320/1979

**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff**

v.

**BRET GILLIAM, Defendant**

Criminal No. 321/1979

**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff**

v.

**BRET GILLIAM, Defendant**

Criminal No. 322/1979

**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff**

v.

**BILL WALKER, Defendant**

Criminal No. 323/1979

Territorial Court of the Virgin Islands
Div. of St. Croix at Christiansted

February 13, 1980

14

ROBERT ELLISON, ESQ., Chief Attorney General (Office of the Attorney General), Christiansted, St. Croix, V.I., *for plaintiff*

JOEL HOLT, ESQ., Christiansted, St. Croix, V.I., *for defendant*

SILVERLIGHT, *Judge*

## MEMORANDUM OPINION

These cases in which the defendant, Bret Gilliam, was charged with Interfering with a police officer performing his duty,[1] Aggravated Assault & Battery[2] and Disturbing the Peace,[3] and the defendant, William Walker, was charged with Littering,[4] were consolidated for trial by consent of Counsel and pursuant to Rules 8 and 13 Fed.R.Crim. P.

The charges arose out of the following sequence of events. On July 25, 1979, defendant Walker parked his truck in a driveway or alley which leads from Queen Cross Street, Christiansted into the pedestrian mall known as Pan Am Pavillion. He then entered V.I. Divers,

---

[1] 14 V.I.C. § 1508.
[2] 14 V.I.C. § 298(1).
[3] 14 V.I.C. § 622(1).
[4] 19 V.I.C. § 3101(1).

Ltd., his place of employment, which occupies a store immediately adjacent to the driveway or alley. Ms. Phyllis Morrison, a school crossing guard who was assigned to parking control in the area, then issued a parking citation[5] which she placed on the windshield of the truck. Shortly afterward, Walker emerged from his place of employment, saw the ticket on his truck, promptly took it from the windshield, tore it up and threw the pieces to the ground in front of Morrison.[6] After Morrison told Walker she was going to cite him for littering, he reentered the V.I. Divers store and Morrison called police headquarters for assistance. Police Officer Mario James responded to the call for assistance.

Upon his arrival, Morrison advised James of her problem with Walker and thereupon, James entered the V.I. Divers store and directed Walker outside.[7] Gilliam, the owner of V.I. Divers, who was in his office on the mezzanine level of the store at the time, overheard the conversation which was taking place between James and Walker in the presence of customers. He immediately descended to the ground floor level to inquire as to the reason for the conversation. By the time Gilliam reached the ground floor, James and Walker were exiting the store through the Queen Cross Street door, he followed them outside where he asked James what was happening. James responded to this inquiry by pushing Gilliam away and instructing him to mind his own business.[8] Gilliam reiterated his identification of himself as the owner of V.I. Divers and

---

[5] This citation was improvidently issued since the vehicle was not parked on a public street.

[6] Morrison, Tr. P. 2, Walker P. 96.

[7] The testimony is conflicting from the time of Officer James' arrival at the scene. The findings recited supra are made because there is no substantial disagreement as to them. The facts recited infra were found by the Court upon consideration of the demeanor of the witnesses, the degree to which the testimony of each witness was or was not supported by other evidence or testimony, the interest of the witnesses in outcome of the case, and after assigning appropriate weight to such evidence. I have given great weight to the testimony of the witnesses Peter Gurfein and Robert Christian on the strength of these considerations. The testimony of each of these witnesses was clear, concise, responsive and not withstanding their sequestration during trial was supportive of the testimony of the other.

The Court is cognizant of the fact that defendant Gilliam paid transportation and minimal per-diem expenses to these witnesses. This fact, however, does not detract from the weight to be given their testimony. Since both witnesses reside outside this jurisdiction, their appearance could not have been enforced by subpoena, and it was only reasonable to expect that their expenses would be paid if they were to attend this trial.

[8] Hitchcock, Tr. P. 45; Gurfein, Tr. P. 56; Walker, Tr. P. 92.

Walker's employer at least twice and attempted to discuss the parking situation with James, imploring him to contact his supervisor. On each occasion, James rebuffed Gilliam and, in substance, directed him to mind his own business and go away. When Gilliam attempted to continue the discussion, James pushed him against the building, placed a handcuff on Gilliam's left wrist and placed Gilliam under arrest. When Gilliam remonstrated with James, telling him it was unnecessary to handcuff him, James responded by striking Gilliam with his slapper[9] and continuing to attempt to handcuff him.

No purpose would be served by attempting to establish the number of blows struck by James or their force. None of the blows, however, were struck in response to any untoward resistance by Gilliam. Gilliam was then roughly escorted across the street by James where the defendant was slammed into the side of the car, jerked off the side of the car, shoved in a manner which caused his head to strike the top of the door frame and unceremoniously deposited in the back of the police car.[10] Walker was then placed in the police car and both defendants were taken to the police station where the pending charges were made.

## I. *Littering*

■ Defendant Walker has conceded that he tore up the ticket which had been placed on his truck and threw it to the ground.[11] Our anti-littering statute, 19 V.I.C. § 3103 provides:

a. No person shall—

1. throw, place or deposit any waste in any public place, except in receptacles in the manner provided by law and regulations thereunder.

No further discussion is required for me to determine the guilt of the defendant Walker of a violation of this statute.

## II. *Disturbing the Peace*

■ Gilliam is charged with a violation of 14 V.I.C. § 622(1), by threatening Officer James, shouting and resisting arrest. The record in no way supports the conclusion that Gilliam was shouting and, as determined infra, he did not interfere with a police officer or resist a lawful arrest. With regard to the alleged threat, the

---

[9] A slapper is known to most lay persons as a blackjack.
[10] Christian, Tr. P. 36; Gurfein, Tr. P. 58; Gilliam, Tr. P. 77.
[11] Walker, Tr. P. 96.

record reflects only the testimony of James that Gilliam said "you hit me again and we're going to take care of you. We got guns and knives and all the stuff in the store."[12] On the other hand, the testimony of Peter Gurfein indicates only Gilliam's efforts to seek the assistance of James' supervisor. Gurfein testified[13] as follows:

> Q. Did you ever hear Mr. Gilliam make any threats to the police officer?
>
> A. No. I heard the officer at one point say to Gilliam "Are you threatening me?" That was when Gilliam said "there could be a lot of trouble unless you call your supervisor." That was around the time just before the officer sought to handcuff him. Gilliam responded to that, no, he's not threatening him. He just wants to call the supervisor to straighten it out, and if the officer would talk to the supervisor, it would be straightened out, or words to that effect.

I cannot say that the evidence creates an abiding conviction to a moral certainty that the defendant committed the act charged. On the contrary, I conclude that the Government has failed to prove its case beyond a reasonable doubt. Defendant must be acquitted of this charge.

### III. *Aggravated Assault & Battery*

■ Gilliam is alleged to have committed an aggravated assault and battery in violation of 14 V.I.C. § 298(1)[14] by "struggling persistently and, in doing so, striking a police officer in an attempt to avoid being handcuffed subsequent to a lawful arrest." The credible evidence falls far short, however, of establishing any gesture or act on the part of Gilliam which could be characterized as an offensive act as distinguished from a defensive act. This Court finds that Gilliam acted only to protect himself in a reasonable manner when he was arrested. This charge must also fall.

### IV. *Interfering with a Police Officer*

The complaint charges,[15] in this case, that the defendant, on July

---

[12] James, Tr. P. 25, P. 31.

[13] Gurfein, Tr. P. 58.

[14] "whoever commits an assault and battery—
(1) Upon an officer in the lawful discharge of the duties of his office, if it was known or declared to the offender that person assaulted was an officer discharging an official duty. . . ."

[15] 14 V.I.C. § 1508 provides that:
"whoever willfully resists, delays or obstructs any public officer in the discharge, or attempt to discharge any duty of his office, shall . . . be fined . . ."

25, 1979, "did in the vicinity of V.I. Divers, Strand Street, Christiansted, willfully resist, dealy (sic) and obstruct a police officer in the lawful discharge of his duty, to wit: the above named defendant interfered with the complainant's (a police officer) official conversation with another individual. Subsequently the above named defendant was arrested and persisted in arguing and struggling with the complainant." Although I am satisfied that the defendant must also be acquitted of this charge, I believe some discussion is needed to express the reasons.

■ It seems to this Court that the better interpretation of our statute is that merely remonstrating with an officer in behalf of another, or criticizing or questioning an officer while he is performing his duty, *when done in an orderly manner*, does not amount to conduct sufficient to constitute an interference with an officer. State v. Tages, 457 P.2d 289 (Ariz. App. 1969), State v. Leigh, 179 SE 2d 708 (NC, 1971), Annot., "What Constitutes Obstructing or Resisting an Officer, in the Absence of Actual Force," 44 ALR3d 1018, and 58 Am. Jur. 2d, Obstructing Justice, § 19. This conclusion appears to be supported by the fact that our Code also contains a prohibition against disobeying the orders of a policeman. 14 V.I.C. § 883 provides, in pertinent part that:

> Whoever disobeys the lawful orders of any police officer . . . shall be fined. . . .

It seems clear that force is not an element of this offense and that the lack of this element is the only distinguishing factor between this section from section 1508. Both sections are derived from Title IV of the 1921 Codes and it appears certain that one or the other would have been omitted as redundant, were it not for this distinguishing feature.

■■ In the case at bar, I have already found that the only action of the defendant Gilliam was inquisitorial in nature. I hold, as did the Supreme Court of South Dakota, in State v. Knudsen, 131 N.W. 400 (1911),

> . . . that the evidence in this case does not show that the acts and statements of the accused on this occasion were done willfully or maliciously, or with an intent to obstruct the officer in the discharge of his duty as such officer, and the evidence . . . , fails to show that the defendant in any manner delayed or obstructed the officer, or that he had any intention of obstructing the officer in the performance of his duty, or to in any manner vio-

19

late the law. . . . We do not wish to be understood as holding that to constitute an obstruction of the officer under the statute, there must be an actual or technical assault upon the officer; but there must be acts clearly indicating an intention on the part of the accused to prevent the officer from performing his duty, and to aid and assist the party whom he is seeking to arrest in avoiding such arrest. (Underscoring added.)

I am not unmindful of those cases which appear to establish a lesser standard to sustain the charge under similar statutes.[16] I find them, however, to be distinguishable on their facts or simply less persuasive than those which support the thesis set out above. It must be remembered that I have already determined that Gilliam's efforts were inquisitorial only and his arrest, therefore, was unlawful. Even if we assume, arguendo, that Gilliam resisted subsequent to his arrest,[17] "Where the arrest is illegal, force may be used to resist being detained or placed in custody." State v. Harris, 236 A.2d 479 at 482. This charge too, must fall.

## V. *Conclusion*

Judgments consistent with this opinion shall be entered in each of the cases.

---

[16] See State v. Harris, 236 A.2d 479 (Conn. Cir, 1967) and State v. Sandman, 286 P.2d 1060 (Utah, 1955), contra.

[17] See the language of the complaint, page 18, supra.