**ROLAND MURRELL, Appellant**

**v.**

**GOVERNMENT OF THE VIRGIN ISLANDS, Appellee**

D.C. Criminal App. No. 2005-66

District Court of the Virgin Islands

St. Thomas and St. John Division

June 26, 2009

HAROLD W.L. WILCOCKS, TPD, St. Thomas, USVI, *For the appellant.*

MAUREEN PHELAN, AAG, St. Thomas, USVI, *For the appellee.*

GÓMEZ, *Chief Judge of the District Court of the Virgin Islands*; FINCH, *Judge of the District Court of the Virgin Islands*; and BRADY, *Judge of the Superior Court of the Virgin Islands, Division of St. Croix, sitting by designation.*

## MEMORANDUM OPINION

(June 26, 2009)

Following a bench trial conducted in the Superior Court of the Virgin Islands, Division of St. Thomas and St. John[1] (the "Superior Court"), Roland Murrell ("Murrell") was convicted of resisting arrest. Murrell now appeals his conviction. For the reasons stated below, we will affirm Murrell's conviction.

## I. FACTS

At approximately 11:45 p.m. on July 18, 2004, Officers Shawn Stapleton and Kent Bellot of the Virgin Islands Police Department were dispatched to the residence of Tricia Taylor ("Taylor"), at 143A-2 Anna's Retreat in St. Thomas, U.S. Virgin Islands, pursuant to a 911 call from

---

[1] Prior to 2005, the trial court was known as the Territorial Court of the Virgin Islands and its judges were referred to as Territorial Court Judges. Effective January 1, 2005, however, the name of the Territorial Court changed to Superior Court of the Virgin Islands. See Act of Oct. 29, 2004, No. 6687, sec. 6, § 2, 2004 V.I. Legis. 6687 (2004). Recognizing this renaming, this Court employs the terms Superior Court and Superior Court Judge.

Taylor. When the officers first arrived at Taylor's residence the officers observed a broken bathroom window. At approximately 1:00 a.m. on July 19, 2004, Taylor called 911 again, and Officers Stapleton and Bellot were again dispatched to Taylor's residence. On the second visit to the Taylor's house, Officers Stapleton and Bellot encountered Murrell on the premises. At the time, Murrell was in a relationship with Taylor. The officers arrested Murrell on the porch of Taylor's house.

On July 26, 2004, the government of the Virgin Islands (the "Government") filed a three-count criminal complaint against Murrell. Count One charged Murrell with maliciously destroying personal property in an act of domestic violence, in violation of title 14, section 1266 of the Virgin Islands Code and title 16, section 91(b)(9) of the Virgin Islands Code. *See* V.I. CODE ANN. tit. 14, § 1266 (1921); V.I. CODE ANN. tit. 16, § 91(b)(9) (1998). Count Two charged Murrell with resisting Officer Stapleton in the lawful discharge of the duty of his office, in violation of title 14, section 1508 of the Virgin Islands Code ("Section 1508"). Count Three charged Murrell with disturbing the peace of Tricia Taylor by destroying her personal property in an act of domestic violence, in violation of title 14, section 622(1) of the Virgin Islands Code. *See* V.I. CODE ANN. tit. 14, § 622 (1936).

A bench trial in this matter was conducted on February 5, 2005. At the trial, the prosecutor asked Taylor:

> Q: At approximately between 11:00 and 11:30 p.m. [on July 18, 2004], did something happen at your home involving Mr. Murrell?
> A: Something like what? What you mean, "something?"
> THE COURT: Anything unusual.
> Q: That gave rise to these charges?
> A: Nothing really like should have give rise to these charges.
> Q: Well, what happened that caused — that caused the police to come to your home that night?
> A: Attorney, I don't even remember.
>
> . . .
> THE COURT: Miss Taylor, do you remember anything regarding an alleged incident that occurred on July 18, 2004, at your residence at 143A-2 . . . ?

(Trial Tr. 21, Feb. 5, 2005.) Thereafter, the court excused Taylor as a witness.

▬▬ ▬▬▬ ▬▬

Additionally, Officer Bellot testified on behalf of the Government at Murrell's trial. The prosecutor questioned Officer Bellot regarding his two visits to Taylor's residence on July 18, 2004:

Q: Now, what happened when you — after you spoke with [Taylor], what happened?

. . .

A: Oh, well, when my partner was talking to her, I went, had my flashlight. I was looking in the bush to see if the person or the male was still in the bushes hiding.

Q: And who were you looking for?

A: I was looking for her boyfriend, Mr. Roland [Murrell].

Q: . . . . And did you find him?

A: At the first time, no, he wasn't there at that time.

. . .

Q: And what happened when you arrived the second time?

A: When I got there — when we arrived there, we went downstairs. Officer Stapleton went one way, I went the other way around the house.

. . .

Q: And what did you do?

A: When I was coming around the corner, I made contact with a male.

. . .

Q: And what did [Taylor] do?

A: Point out Mr. Murrell as the person who shatter her window.

Q: And what did you do when she pointed at him?

A: At that time, we advised Mr. Murrell that he was under arrest, and while we was putting on the handcuff, he sort of — a little struggle ensued and we had to use more force to subdue him.

Q: What exactly did he do?

A: He was pulling away, struggling away. Pulling away.

Q: How many times did he do it?

A: About on[ce] or twice he pulled away.

Q: And did you require assistance in order to subdue him?

A: Yes. Officer Stapleton assisted. [Murrell] was trying to pull away from both of us.

Q: At the same time?

A: Yes.

(*Id.* at 49-51, 54.)

Officer Stapleton also testified at the trial. During the trial, the prosecutor engaged in the following inquiry with Officer Stapleton:

Q: And what happened when you approached [Murrell]?

A: He put up a little struggle.

Q: How did he struggle?

A: He pulled his hands away several times.

. . .

Q: And what else did he do?

A: Basically, he just pulled his hands away and put up a little resistance.

Q: Did he say anything during this —

A: A few words, but I cant's remember.

Q: What type of words were they?

A: They weren't curse words.

Q: How long did it take for him to be subdued?

A: I would say about 45 seconds, a minute.

Q: And did you need assistance in order to do so?

A: Yes.

Q: And who assisted you?

A: Officer Bellot.

. . .

Q: And what did you tell [Murrell] when you approached him?

A: Told him he was under arrest for destroying the window and then I read him his rights.

Q: And what happened after you did that?

. . .

A: Basically, he put up a little struggle then we took him to the station.

(*Id.* at 36.)

1101

 

After the defense attorney cross examined Officer Stapleton, the trial judge stated:

> THE COURT: Well, let me ask you this because you are saying that when you went to put [Murrell] under arrest, he pulled away his hands several times and you mentioned that he put up resistance.
>
> What do you mean, "put up resistance?"
>
> THE WITNESS: Basically, when he pulled his hands away.
>
> THE COURT: Oh, I see. That's what you call that he resisted. Oh, I thought that maybe there was something more that he had done, overt conduct on his part, other than pulling his hands away.

(*Id.* at 43.)

After the Government rested, Murrell moved for a judgment of acquittal on all three counts of the complaint. The Government did not object to the dismissal of Counts One and Three, and the court dismissed those charges. Murrell also moved to dismiss Count Two of the complaint for failure to allege the offense of resisting arrest under Section 1508. The trial judge denied Murrell's motion to dismiss, reasoning that the complaint was sufficient because it alleged "the nature of the crime, the citation of the statute, it parrots the statute and says the date and place." (*Id.* at 62.) In the Superior Court's view, the absence of any specific allegations regarding the manner in which Murrell purportedly resisted or interfered with Officer Stapleton did not render the complaint fatally defective. Regarding the sufficiency of the evidence supporting the resisting arrest charge in Count Two, the trial judge stated:

> THE COURT: I noticed that [title 14, section 1508 of the Virgin Islands Code] doesn't say how long he has to resist. It doesn't say how he has to resist. All he has to do is resist, and you could resist in several ways. He could have give[n] [] a football tackle to the officer. He could have shoot some shots at him to keep him from getting arrested. He could have engaged him in a knock-down, break-down, and the other side of town struggle.
>
> Anytime that he impedes or obstructs the progress of the officer in arresting him, then, he has resisted arrest. So, when the officer attempted to arrest [Murrell] and he pull[ed] away his hand, or didn't let the officer get the handcuffs on him, he is preventing, and precluding, and impeding, and obstructing the officer from arresting him . . . .

(*Id.* at 64.) The court denied Murrell's mid-trial motion for a judgment of acquittal on grounds that a reasonable jury viewing the evidence in the light most favorable to the Government could find that Murrell willfully resisted arrest, as charged in Count Two.

Finally, Murrell took the stand in his own defense at the bench trial. The defense attorney asked Murrell:

> Q: What happened? . . . . [D]id anything happened wile you were being arrested?
> A: No, no. This officer lies. They lie. [The trial judge] know that, too.
>
> THE COURT: Don't implicate me in that.
>
> THE WITNESS: You know that.
>
> . . .
>
> The officer them come by the house, arrest me. I didn't give them no problems. I went to the station. When I removed my shoes hit him on his foot and he push me to the wall. That's what happen[ed].

(*Id.* at 69-70.)

After both parties rested, the Superior Court concluded:

> THE COURT: I find that [Murrell] did resist arrest, in terms that he willfully resisted and delayed and obstructed the officer, because when they attempted to put the handcuffs on him, he pulled his hand away. He pulled his hand away several times. . . . But once you are going to pull away several times, the officer can't put handcuffs on you, then you are impeding and obstructing them from arresting you, and he put up resistance when they attempted to arrest him when he was told that he was under arrest.
>
> So, I find that the government has proven that [Murrell] has willfully resisted, delayed, and obstructed Officer Stapleton in the lawful discharge of his duty when Officer Stapleton attempted to effectuate an arrest on the defendant . . . .

(*Id.* at 75.)

Immediately following the trial, the parties waived the preparation of a pre-sentence report, and the Superior Court conducted a sentencing hearing regarding Murrell's conviction on Count Two. The court

sentenced Murrell to six month in prison, and fined him $500, plus $75 in court costs. On February 24, 2005, the Superior Court issued a written judgment memorializing its February 5, 2005, verbal conviction and sentence imposed on Murrell.

Murrell timely appealed the February 24, 2005, judgment, raising three issues. First, whether the complaint filed against Murrell was sufficient to support a prosecution for resisting arrest. Second, whether the Government presented sufficient evidence at trial for a rationale fact-finder to conclude beyond a reasonable doubt that Murrell willfully resisted, delayed, or obstructed Officer Stapleton in the lawful discharge of his duties. Third, whether Murrell's conviction for resisting arrest must be set aside as inconsistent with the dismissal of the charges that lead to the arrest.

## II. JURISDICTION

This Court has jurisdiction over appeals of final judgments and orders of the Superior Court filed before January 29, 2007, the date on which the Supreme Court of the Virgin Islands was certified as ready to assume such jurisdiction. *See* Revised Organic Act of 1954 23A, 48 U.S.C. § 1613a; Act No. 6730 § 54(d)(1) (Omnibus Justice Act of 2005).

## III. STANDARD OF REVIEW

"We review *de novo* questions of law, issues implicating rights protected under the U[nited] S[tates] Constitution, and the interpretation of statute[s]. However, we afford the more deferential clear error review to [the trial court's] factual determinations." *Garcia v. Gov't of the V.I.*, 48 V.I. 530, 534 (D.V.I. App. Div. 2006) (citing *Gov't of the V.I. v. Albert*, 42 V.I. 184, 89 F. Supp. 2d 658, 663 (D.V.I. App. Div. 2001)).

This Court reviews *de novo* the sufficiency of a criminal charging document — here, the criminal complaint.[2] *See United States v. Vitillo,*

---

[2] The Court notes that, because the offenses for which Murrell was charged were mis-demeanors, they were permitted to be prosecuted by criminal complaint. *See* FED. R. CRIM. P. 7(a)(2) (explaining that misdemeanors may be prosecuted in accordance with Federal Rule of Criminal Procedure 58(b)(1)); FED. R. CRIM. P. 58(b)(1) ("The trial of a misdemeanor may proceed on an indictment, information, or complaint."). Rules 7(a)(2) and 58(b)(1) of the Federal Rules of Criminal Procedure are made applicable in the Superior Court *via* Rule 7 of the Rules of the Superior Court. *See* V.I. SUPER. CT. R. 7 (providing that the Federal Rules of Criminal Procedure apply in the Superior Court, to the extent not inconsistent with the

490 F.3d 314, 320 (3d Cir. 2007) (explaining that plenary review applies to a challenge to the sufficiency of a charging document); *Bigby v. Gov't of V.I.*, 125 F. Supp. 2d 709, 712 (D.V.I. App. Div. 2000) ("The sufficiency of an information presents a question of law over which our review is plenary.").

The sufficiency of the evidence supporting an appellant's conviction is also subject to plenary review. *See United States v. Taftsiou,* 144 F.3d 287, 290 (3d Cir. 1998); *Castillo v. Gov't of the V.I.*, 48 V.I. 519, 523 (D.V.I. App. Div. 2006).

Reversal may be avoided if trial errors are found to be harmless. *See* FED. R. CRIM. P. 52(a) (2002) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.");[3] *United States v. Hakim,* 344 F.3d 324 (3d Cir. 2003). Where trial counsel fails to object to an error, we reverse only if the asserted violation amounts to "plain error." *See* FED. R. CRIM. P. 52(b) (2002) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."); *United States v. Davis,* 407 F.3d 162, 164 (3d Cir. 2005).

## IV. ANALYSIS

### A. Sufficiency of the Complaint

Murrell argues that his conviction on Count Two should be reversed because the complaint, on its face, fails to sufficiently charge the offense of resisting arrest.

#### 1. Timing of the Challenge

The record in this case shows that Murrell did not challenge the complaint on grounds that it failed to charge an offense until the day of his trial. The Government claims that, because Murrell failed to raise that issue prior to trial, he should be prohibited from doing so on appeal.

■ However, the failure of a charging document to sufficiently state an offense is a fundamental defect, which may be raised at any time. *See*

---

Rules of the Superior Court); *see also* V.I. SUPER. CT. R. 123(f) (explicitly incorporating the provisions of Federal Rule of Criminal Procedure 7).

[3] Federal Rule of Criminal Procedure Rule 52(a) is made directly applicable to the Superior Court by Rule 7 of the Rules of the Superior Court.

FED. R. CRIM. P. 12(b)(3)(B);[4] *see also United States v. Wander*, 601 F.2d 1251, 1259 (3d Cir. 1979) ("Failure of an indictment sufficiently to state an offense is a fundamental defect however, and it can be raised at any time."); *see also, e.g., United States v. Hedaithy*, 392 F.3d 580, 587 (3d Cir. 2004) (explaining that Rule 12(b)(3)(B) permits a defendant to challenge the indictment for first time on appeal on grounds that the specific facts alleged therein did not amount to a criminal offense); *United States v. Panarella*, 277 F.3d 678, 680 (3d Cir. 2002) ("[A] defendant . . . [may] argue on appeal that the specific facts alleged in the charging document do not amount to a criminal offense."); *Gov't of V.I. v. Pemberton*, 813 F.2d 626, 631 (3d Cir. 1987) ("[A]n objection to an information on the ground that it fails to charge an offense may be raised for the first time on appeal.").

■ "Although the failure . . . to state an offense is a fundamental defect which can be raised at any time, judicial interests[5] require that such challenges be made at the earliest possible moment." *United States v. Vitillo*, 490 F.3d 314, 324 (3d Cir. 2007) (citations and quotations omitted)). In reviewing a charging document for sufficiency on appeal after a conviction, the document will be upheld "unless it is so defective that it does not, by any reasonable construction, charge an offense." *Vitillo*, 490 F.3d at 324 (quoting *United States v. Childress*, 58 F.3d 693, 720, 313 U.S. App. D.C. 133 (D.C. Cir. 1995)).

■ Accordingly, the Court will consider Murrell's argument that the complaint fails to charge an offense, notwithstanding that he waited until trial to move for such relief in the Superior Court. In doing so, the Court will construe the complaint liberally. *See, e.g., Vitillo*, 490 F.3d at 324 (reviewing *de novo* the trial court's order denying the defendant's Rule 12(b)(3)(B) motion to dismiss the indictment for insufficiency, even though the motion was filed six months after the trial ended).

---

[4] Rule 12(b)(3)(B) sets forth a list of motions that must be made prior to trial, including "a motion alleging a defect in the indictment or information — but at any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense . . . ." FED. R. CRIM P. 12(b)(3)(B).

[5] These judicial interests include "avoiding the needless waste of judicial resources," and "discouraging tactical delays by defendants seeking a convenient ground of appeal in the event of a guilty verdict." *Vitillo*, 490 F.3d at 324 (citations and quotations omitted).

## 2. 14 V.I.C. § 1508

Murrell contends that the allegations in Count Two are insufficient because they merely parrot the language of Section 1508 and lack the requisite factual allegations to fairly inform Murrell of the charges he must face.

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation." *See* U.S. CONST. amend. VI.[6]

 To sufficiently allege an offense, a charging document must: "(1) contain[] the elements of the offense intended to be charged, (2) sufficiently apprise[] the defendant of what he must be prepared to meet, and (3) allow[] the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." *Vitillo*, 490 F.3d at 321; *see also Gov't of the V.I. v. Moolenaar*, 39 V.I. 457, 133 F.3d 246, 248 (3d Cir. 1998) (applying the above test to charging documents alleging offenses against the Virgin Islands); *People v. Leach*, 3 Ill. App. 3d 389, 279 N.E.2d 450, 452 (Ill. App. 1 Dist. 1972) ("It is a general rule of criminal pleading that a complaint, information or indictment which does not set forth the nature and elements of the crime sought to be charged fails to state an offense and is subject to dismissal.").

 Section 1508 makes it unlawful to "willfully resist[], delay[] or obstruct[] any public officer in the discharge, or attempt to discharge any duty of his office . . . ." 14 V.I.C. § 1508 (1921). To sustain a charge for resisting arrest in violation of Section 1508, the Government was required to allege: (1) that the defendant willfully resisted, delayed, or obstructed a public officer; and (2) that the officers were lawfully discharging or attempting to discharge their official duties office at the time of the offense. *See id.*

---

[6] The Sixth Amendment applies to the Virgin Islands by virtue of the Revised Organic Act. *See* Revised Organic Act of 1954, § 3, *as amended by* 48 U.S.C. § 1561 (1984) (extending to citizens of the Virgin Islands the Sixth Amendment right of the accused to be apprised of "the nature and cause of the accusation"); *see also Abiff v. Gov't of the V.I.*, 313 F. Supp.2d 509, 512 (D.V.I. App. Div. 2004) ("The Sixth Amendment is made applicable to the Virgin Islands by section 3 of the Revised Organic Act.").

Murrell does not dispute that the complaint in this matter contains the essential elements of the offense of resisting arrest under Section 1508. Rather, Murrell argues that the complaint in this matter was required to do more than recite the bare-bones elements of Section 1508.

 As a general rule, a charging document that tracks the statutory language adequately states the essential elements of the offense charged. *See Russell v. United States,* 369 U.S. 749, 763-64, 82 S. Ct. 1038, 8 L. Ed. 2d 240 (1962); *see also United States v. Addonizio,* 451 F.2d 49, 58 n.7 (3d Cir. 1971) ("[An] indictment which charges a statutory crime by following substantially the language of the statute is amply sufficient, provided that its generality neither prejudices defendant in the preparation of his defense nor endangers his constitutional guaranty against double jeopardy."). Yet,

> [i]t is an elementary principle of criminal pleading, that where the definition of an offence, whether it be at common law or by statute, includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species,-it must descend to particulars.

*Russell,* 369 U.S. at 763 (quoting *United States v. Cruikshank,* 92 U.S. 542, 558, 23 L. Ed. 588 (1875)). Indeed, "mere tracking of the statutory language is insufficient where additional information is necessary to provide the accused with a clear understanding of the specific charges against him." *Horton,* 676 F.2d at 1169.

 For a complaint tracking the statutory language to adequately apprise the defendant of the charges against him, "the language of the statute . . . must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." *Hamling v. United States,* 418 U.S. 87, 117-18, 94 S. Ct. 2887, 41 L. Ed. 2d 590 (1974); *see also United States v. Pirro,* 212 F.3d 86, 93 (2d Cir. 2000) ("[T]he indictment must state some fact specific enough to describe a particular criminal act, rather than a type of crime."); *United States v. Smith,* 230 F.3d 300, 305 (7th Cir. 2000) ("[W]e require, at a minimum, that [an indictment] provide some means of pinning down the specific conduct at issue."); *cf. Russell,* 369 U.S. at 766 ("A cryptic form of indictment . . . requires the defendant to go to trial with the chief issue

undefined."). Charging documents that track the statutory language have been held to be insufficient in cases where "factual information that is not alleged in the [charging document] goes to the very *core of criminality under the statute.*" *Kay,* 359 F.3d at 756-57 (emphasis in original).

Neither this Court nor the United States Court of Appeals for the Third Circuit has addressed the level of specificity required to allege the offense resisting, delaying, or obstructing an officer under Section 1508. *Cf. United States v. Kay,* 359 F.3d 738, 756 (5th Cir. 2004) ("[R]elatively few reported opinions have analyzed . . . whether an indictment that sets out the elements of the offense charged *merely by tracking the words of the statute itself,* is insufficient." (emphasis in original)).

The Superior Court has, however, considered the requirements for charging an offense under Section 1508. In *Government of the Virgin Islands v. David,* 20 V.I. 259, 265 (V.I. Terr. Ct. 1984), the Superior Court evaluated the sufficiency of two complaints charging Section 1508 violations against different defendants in separate matters.[7] The complaint filed against defendant Lloyd David ("David") charged that "defendant David on or about the 23rd day of August, 1983, in St. Thomas '[d]id resist arrest and obstruct police officers Sgt. J. Gifft and Det. Daniel Liburd, in violation of [Section] 1508.' " *David,* 20 V.I. at 262. The complaint filed against defendant Adrian Francis ("Francis"), charged that "defendant Francis[,] on or about the 30th day of September, 1983, in St. Thomas/St. John[,] '[w]illfully resisted, delayed and obstructed Officer E. Prescod in the discharge or attempt to discharge the duties of his office in violation of [Section] 1508.' " *Id.* Defendants David and Francis both filed pre-trial motions to dismiss, arguing that the respective complaints alleged insufficient facts to inform the defendants of the charges against them. *Id.* at 263.

The Superior Court granted the motions to dismiss with respect to both defendants. Regarding the charges against David, the court found:

> [T]he Government has failed to include two essential elements of the offense of resisting arrest. First, there is no allegation that the defendant's alleged actions were willful as required by the statute, and, sec-

---

[7] The Superior Court consolidated the two underlying cases in *David* solely for the purposes of determining the respective motions to dismiss for failure to charge an offense under Section 1508. *David,* 20 V.I. at 261.

■■■ ■■■ ■■■

ond that these police officers were lawfully discharging or attempting to discharge the duties of their office. Additionally, the Government failed to specify the manner in which the defendant resisted arrest and obstructed the officers. The Court, therefore, concludes that these counts are fatally defective and must be dismissed.

*Id.* With respect to the complaint against Francis, the court stated: "the counts in question, although parroting the language of the statutory sections, are also fatally defective. For example, [the complaint] again failed to specify which of the many possible ways the defendant resisted arrest and obstructed the police officer from discharging his official duties." *Id.* at 263-64. As to both defendants, the Superior Court reasoned that "[w]ithout any factual statements as to their alleged misconduct, these defendants are not being apprised of what they must be prepared to defend against." *Id.* at 264.

Courts construing resisting or obstructing officer statutes in other jurisdictions have also required the charging document to specify the manner in which the defendant allegedly resisted or obstructed the officer. *See, e.g., People v. Hilgenberg,* 223 Ill. App. 3d 286, 585 N.E.2d 180, 183, 165 Ill. Dec. 784 (Ill. App. 2 Dist. 1991) ("A complaint which charges resisting or obstructing a peace officer must sufficiently describe the physical acts which constitute the crime."); *Pope v. State,* 528 S.W.2d 54 (Tenn. Crim. App. 1975) (holding that, in order to validly charge the offense of interfering with a police officer, an indictment must recite facts respecting the lawfulness of the officer's acts, the official character of the officer, and the nature of the resistance); *State v. White,* 3 N.C. App. 443, 165 S.E.2d 19 (N.C. App. 1969) (holding that an indictment "must point out, in a general way at least, the manner in which defendant is charged with having resisted or delayed or obstructed such public officer"); *cf. State v. Tibbs,* 772 S.W.2d 834, 842 (Mo. App. S.D. 1989) (holding that it may be necessary to specify the conduct constituting the offense in an information charging a defendant with resisting arrest).

In, *People v. Leach,* 3 Ill. App. 3d 389, 279 N.E.2d 450 (Ill. App. 1 Dist. 1972) the court addressed the sufficiency of a criminal complaint charging the defendant with obstructing a peace officer. The statute in question stated:

A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer of any authorized act within

his official capacity shall be fined not to exceed $500 or imprisoned in a penal institution other than the penitentiary not to exceed one year, or both.

Ill. Rev. Stat. 1969, ch. 38, par. 31-1. The complaint charged:

> MALINDA LEACH has, on or about October 11, 1969 at Madison & LaSalle, Chicago, Cook County, Illinois, committed the offense of Resisting or Obstructing a peace officer in that she knowingly obstructed the performance of ROBERT GALLOWAY known to her to be a peace officer of CHICAGO POLICE DEPARTMENT while said officer was acting within his official capacity, in violation of Chapter 38, Section 31-1, Illinois Revised Statutes[.]

*Leach,* 279 N.E.2d at 452-53 (quoting the complaint). The court held that, while the complaint tracked the language of the statute, it was nonetheless insufficient. *Id.* at 395. The court reasoned:

> Ill. Rev. Stat. 1969, ch. 38, par. 31-1 which proscribes the resisting or obstructing of a peace officer, does not particularize the offense nor does it describe the acts which constitute the crime. Therefore, a complaint, such as the one in this case, which contains a charge solely in the language of the statute is not sufficient. It does not give the defendant notice of the crime; and it will not support a judgment of conviction.

*Id.*

The court in *People v. Lauer,* 273 Ill. App. 3d 469, 653 N.E.2d 30, 33, 210 Ill. Dec. 443 (Ill. App. 1st Dist. 1995), reviewed the sufficiency of a complaint charging a violation of the same statute as in *Leach.* The complaint in *Lauer,* alleged:

> Erick W. Lauer, 8359 Maynard Rd., Niles, IL has, on or about 8, May 1991 at 8359 Maynard Rd. Niles Cook County Illinois, committed the offense of RESISTING A PEACE OFFICER in that he knowingly resisted the performance by [the police officers] known by him to be [ ] police officer[s] of an authorized act, placing him under arrest, within the official capacity os [sic] said peace officer[s].

*Lauer*, 653 N.E.2d at 33. The court emphasized that, while the statute prohibited either obstructing or resisting a peace officer, the complaint in *Lauer*

specifically alleged that the defendant resisted a peace officer. In upholding the complaint as sufficient, the court acknowledged that "a complaint that uses the statutory language to charge resisting or obstructing a peace officer in the disjunctive is too general because resisting can be different from obstructing, which can involve a wide range of physical acts." *Id.* "In contrast, resisting arrest is a physical act that necessarily involves a physical struggle. It does not potentially involve the broad range of actions that obstructing a peace officer can involve. For that reason, a complaint charging resisting a peace officer does not need to specify particular physical acts." *Id.*

Here, Count Two of the complaint against Murrell reads:

> On or about July 18, 2004, in St. Thomas, Virgin Islands, Roland Gary Murrell, of St. Thomas, Virgin Islands, did willfully resist, delay, or obstruct Officer Shawn Stapleton in the lawful discharge of the duty of his office, in violation of [Section 1508]. (RESISTING ARREST)

(Compl. 1, Super. Ct. Crim. No. 247/2004, July 26, 2004.)

Those allegations track the statutory language and summarize the essential elements of a Section 1508 violation. The complaint informs Murrell of the approximate date of the offense and narrows the location down to the island of St. Thomas. It also identifies "Officer Shawn Stapleton" as the officer whose duties were impeded and states that the duty being discharged was "lawful," which could be construed liberally as "official." (*Id.*) Given the references in Counts One and Three to the broken window at Taylor's house on July 18, 2004, the complaint may be read liberally to notify Murrell that Officer Stapleton was one of the police officers who arrested him on July 18, 2004.[8]

The text of Count Two charges Murrell in the disjunctive with resisting, delaying, *or* obstructing Officer Stapleton. However, the parentheses that follow describe the charge as resisting arrest only. That parenthetical language serves to limit the otherwise broad language of Count Two, and puts Murrell on notice that he is being accused of the specific crime of resisting arrest. *See, e.g., State v. Morgan*, 133 LA. 1033, 63 So. 509, 512-13 (La. 1913) (upholding a charging document as sufficient based on parenthetical language because "[t]he parenthesis was inserted . . . in order to explain that the charge, as otherwise expressed in

---

[8] *Otherwise, there is no indication of what type of "officer" Officer Stapleton is.*

the bill, was intended to carry a meaning different from that which, without the parenthesis, the words used would import"). Accordingly, the complaint in this matter was sufficiently specific to notify Murrell of the offense he must defend in Count Two, and to enable him to raise double jeopardy claims in the event of future prosecution for resisting arrest, in violation of Section 1508.

## B. Sufficiency of the Evidence

Murrell also argues that his conviction on Count Two of the complaint should be reversed because the Government failed to produce sufficient evidence at trial to sustain a conviction for resisting arrest.

In evaluating the sufficiency of the evidence, the Court is "required to determine whether the evidence and all reasonable inferences which may be drawn therefrom, viewed in the light most favorable to the government as verdict winner, would permit a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt of every element of the offense." *Castillo,* 48 V.I. at 523; *see also United States v. Wolfe,* 245 F.3d 257, 261 (3d Cir. 2001) (holding that a conviction may be sustained "if any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence"). The inquiry requires an "examin[ation] the totality of the evidence, both direct and circumstantial." *United States v. Gambone,* 314 F.3d 163, 170 (3d Cir. 2003). "[A] claim of insufficiency of the evidence places a very heavy burden on an appellant." *United States v. Gonzalez,* 918 F.2d 1129, 1132 (3d Cir. 1990) (citation and quotations omitted)); *see also Abiff v. Gov't of the V.I.,* 313 F. Supp. 2d 509, 511 (D.V.I. App. Div. 2004) ("[T]his Court may overturn the appellant's conviction only when the record contains no evidence, regardless of how it is weighted, from which the jury could find guilt beyond a reasonable doubt. (citations and quotations omitted)).

 To sustain a conviction for a violation of Section 1508, the Government must present evidence to prove, beyond a reasonable doubt, that (1) Murrell willfully "resisted," "obstructed," or "delayed" a public officer, (2) in the discharge of "any duty of his office." *See* 14 V.I.C. § 1508; *Gov't of the V.I. v. David,* 20 V.I. 259, 265 (V.I. Terr. Ct. 1984). Although the statute encompasses a broad range of conduct, the Government is arguably require to prove some overt act showing that the defendant intended to impede the officer in the performance of his duties.

*See Gov't of the V.I. v. Gilliam*, 17 V.I. 14, 20 (V.I. Terr. Ct. 1980) (holding that Section 1508 does not require "an actual or technical assault upon the officer; but there must be acts clearly indicating an intention on the part of the accused to prevent the officer from performing his duty, and to aid and assist the party whom he is seeking to arrest in avoiding such arrest").

Murrell does not challenge the evidence that the arrest was lawful. Nor does he question Officer Stapleton's status as a "public officer" under Section 1508. Rather, Murrell claims that the facts described by Officers Stapleton and Bellot during the trial did not amount to evidence that he willfully resisted, obstructed, or delayed Officer Stapleton, as required by Section 1508.

 Construed in the Government's favor, the evidence presented at trial shows that Murrell pulled away his hands and put up a struggle when Officer Stapleton tried to arrest him. Murrell was clearly aware that the officers were members of the Virgin Islands Police Department, as they were in uniform when they encountered him. A rational jury believing the Government's evidence could have found beyond a reasonable doubt that Murrell willfully resisted Officer Stapleton when the officers tried to arrest him at Taylor's house on July 18, 2004. *See, e.g., People v. Crawford*, 152 Ill. App. 3d 992, 505 N.E.2d 394, 106 Ill. Dec. 88, (Ill. App. 4 Dist. 1987) (holding that the evidence of resistance was sufficient to support a conviction for resisting a peace officer because the arresting officer testified that, after he placed the defendant under arrest, the defendant pulled away, and two officers were required to subdue the defendant); *cf. Gov't of the V.I. v. Fleming*, 10 V.I. 129 (V.I. Terr. Ct. 1972) (finding that the evidence was insufficient to show that the defendant willfully resisted, delayed, or obstructed an officer by fleeing from the officer because the facts showed that the defendant was too far away to hear that the officer said he was under arrest, and thus he did not know he was under arrest).

## C. Consistency of the Verdicts

Finally, Murrell argues that his conviction on Count Two should be reversed as inconsistent with the dismissal of Counts One and Three. He claims that it was illogical to convict him for resisting arrest given the absence of any evidence that he committed the underlying crime for which he was arrested.

 Murrell acknowledges that it is axiomatic that inconsistency in a verdict is not a sufficient reason for setting the verdict aside. *See United States v. Powell,* 469 U.S. 57, 105 S. Ct. 471, 83 L. Ed. 2d 461 (1984) (explaining that inconsistent verdicts, even those that acquit on a predicate offense while convicting on a compound offense, should not necessarily be interpreted as windfall to government at defendant's expense, as it is equally possible that the jury properly reached its conclusion on compound offense, and then through mistake, compromise, or lenity, arrived at inconsistent conclusion on lesser offense); *Dunn v. United States,* 284 U.S. 390, 52 S. Ct. 189, 76 L. Ed. 356 (1932) (holding inconsistency between verdicts on separate charges against one defendant is not grounds for setting aside the verdict); *see also United States v. Dotterweich,* 320 U.S. 277, 279, 64 S. Ct. 134, 135, 88 L. Ed. 48 (1943) (holding that inconsistency is not a basis for reversal of verdicts that treat co-defendants in a joint trial inconsistently). Rather, Murrell cites *United States v. Maybury,* 274 F.2d 899 (2d Cir. 1960) as support for the proposition the upholding jury verdicts in criminal cases despite inconsistency between counts is not applicable when criminal case has been tried before a judge. *United States v. Maybury,* 274 F.2d 899 (2d Cir. 1960) ("There is no need to permit inconsistency in the disposition of various counts so that the judge may reach unanimity with himself; on the contrary, he should be forbidden this easy method for resolving doubts.").

 However, in *Harris v. Rivera,* 454 U.S. 339, 102 S. Ct. 460, 70 L. Ed. 2d 530 (1981), the United States Supreme Court held that "an apparent inconsistency in a trial judge's verdict [does not] give[] rise to an inference of irregularity in his finding of guilt that is sufficiently strong to overcome the well-established presumption that the judge adhered to basic rules of procedure." *Harris,* 454 U.S. at 346-47. Accordingly, even assuming, *arguendo,* that Murrell's conviction on Count Two is inconsistent with the dismissal of Counts One and Three, such inconsistency would not be grounds for reversal of his conviction on Count Two.

## V. CONCLUSION

For the foregoing reasons, the Court will affirm the February 24, 2005, judgment. An appropriate Order follows.